Hewes v. The People.

## Hewes et al. v. The People, etc., for use, etc.

.1. *Officer—Term of Office Closed upon a Contingency—Sureties.*—Because a certain contingency brings the term of an office to a close, and cuts off or terminates the legal right of the incumbent to perform the acts pertaining to the office, it does not follow that as to the public, his acts are to be discredited or that his sureties are released when his legal right to fill the office has ended. He may be treated as an officer *de facto.* Being such, his acts are valid, not only as against, but also in favor of, third persons; so *held* where a constable, being required under chapter 103, R. S., to give a new bond, failed to do so, but continued to act.

2. *Officer Holding Over—Sureties.*—When an officer holds over after the expiration of his term, no successor having been elected and qualified, the liability of sureties upon his bond will extend beyond the term for a reasonably sufficient time, within which the successor may qualify.

3. *Officer Failing to Give a New Surety.*—Under chapter 103, R. S., when an officer fails to give a new bond, his duty is to turn over to his sureties, all books, moneys, vouchers, papers, and every description of property pertaining to his office, and the sureties may enforce their rights in this respect, by an action of replevin. It is within their power to proceed against him by *quo warranto* or by *mandamus* to require the proper authorities to call an election, etc.

4. *Sureties—Official Bonds—Liability as to Third Persons.*—As the sureties have, by signing an official bond, enabled a person to possess a public office and exercise its functions, and as they have various means under the statute by which to divest the party of his official power, in case of malfeasance on the part of the person holding the office, as between his sureties and an innocent third party, they ought to bear the burden of his official malfeasance.

Memorandum.—Action of debt on a constable's bond. Appeal from a judgment rendered by the Circuit Court of McDonough County; the Hon. CHARLES J. SCOFIELD, Circuit Judge, presiding. Heard in this court at the May term, A. D. 1892, and affirmed. Opinion filed October 31, 1892.

STATEMENT OF THE FACTS BY THE COURT.

This was an action on the official bond of Albert I. Hewes, as constable.

The declaration alleges, in substance, that Albert I. Hewes was elected constable in and for Bushnell township, in McDonough County, Illinois, and that on the 11th day of April, A. D. 1889, the said Albert I. Hewes, as principal, and James Cole, Ross Manly and William Dawson, as sureties, entered into a writing obligatory, which was a constable's bond, in the usual form, with the usual condition, in the penal sum of $2,000; that said bond was filed with the clerk of the proper county and within the time fixed by law; that he entered upon the duties of his office; that while acting as such constable, on the 1st day of October, A. D. 1890, a judgment was obtained in favor of the Bushnell Machine and Transfer Company against one John Spurgeon, before one J. B. Spicer, a justice of the peace in and for said McDonough county, and State of Illinois, for the sum of $168.68; that on the 3d day of December, A. D. 1890, an execution was issued on said judgment and placed in the hands of said Albert I. Hewes, as constable, for collection; that said Hewes collected thereon the sum of $168.68 from said Spurgeon, with costs; that he failed and refused to turn it over to plaintiffs, and that thereby an action accrued in their behalf on account of such neglect and refusal.

To the declaration the defendants pleaded firstly and jointly *non est factum*, on which the plaintiffs took issue.

The defendant Ross Manly, for second plea, pleaded separately, that he had performed all things on his part to be performed, by reason of anything contained in said bond, until the 18th day of September, A. D. 1890, when he gave notice in writing to said Albert I. Hewes that he desired to be released from his bond as constable, and that he, Hewes, give new bond, with sufficient sureties, within ten days from the date of such notice, and that he, defendant Ross Manly, did, within five days after the service of such notice, deliver a copy of such notice, with an affidavit of the time and manner of service, to the county clerk of McDonough county.

The defendants, James Cole and William Dawson, filed a second plea, same as the said second plea of defendant, Ross Manly.

To the second pleas so filed by the said Manly and Cole and Dawson, the court sustained a demurrer, and exception was taken to this ruling. The defendants abided by their pleas. The cause proceeded to trial on the issue of *non est factum*, resulting in a judgment for the plaintiffs, from which defendants appeal.

## APPELLANTS' BRIEF.

By reference to Section 7, Chapter 79, Hurd's Statutes, in relation to justices and constables, the following language may be found: " If any justice or constable shall not, within twenty days after his election or appointment, take the oath and give bond as aforesaid, such justice or constable shall not be permitted after that time to qualify, but the office shall be considered as vacant, and filled accordingly."

The section is the only mode provided by statute whereby the sureties on official bonds may be released from further liability. It places the power within reach of sureties on official bonds to cause a vacation of the office and effectually relieve themselves from further liability. Stern et al. v. The People, for use, etc., 102 Ill. 550.

" While the liabilities of sureties are to be strictly construed, it is not the duty of courts to aid them to escape liabilities by technical, hypercritical construction." This language was used where the sureties were seeking to avoid liability on a bond for mere technical reasons, as will appear by reading the case; yet the court holds that the liability of sureties is to be strictly construed. Cawley et al. v. The People, 95 Ill. 249.

Where a contract of surety relates to the acts and conduct of one in office, a recovery must be based on a violation of the condition, occurring during the official term, and then are liable only for official acts done or omitted. People v. Toomey, 25 Ill. App. 46. The liability of a surety is *strictissimi juris*—it can not be extended by construction.

If the term of an officer is for a definite period, the sureties are only liable for acts performed during such period. People v. Toomey, 122 Ill. 311.

D. CHAMBERS and PONTIOUS & MICKEY, attorneys for appellants.

T. J. SPARKS and SHERMAN & TUNNICLIFF, attorneys for appellees.

OPINION BY THE COURT.

The statute, Sec. 10, Ch. 103, declares that where the surety has given notice, etc., as therein provided, if the officer shall fail to give a new bond within ten days after receiving the notice, or such further time, not exceeding twenty days, as may be allowed him, the "office shall become vacant and the vacancy shall be filled as provided by law." It is urged on behalf of appellants that because the office thus becomes vacant, there was no legal power in the constable to further exercise the official functions and therefore his sureties are not affected by anything he did while acting without legal authority. It will be noticed that the section referred to does not say that the parties are released upon the contingency so arising, though by the following section 12, it is provided in express terms that if a new bond is given they shall not be responsible for the acts of the officer in consequence of business coming to his hands after the approval of the new bond. What, then, is the legal effect of the office becoming vacant, the vacancy to be filled as in other cases? The question is by no means free from difficulty. The majority of this court are, however, inclined to hold that as to third persons the principal in the bond is to be regarded as officer *de facto*, that his acts as such would be valid, and those persons so interested in the official acts performed by him are to be protected. In the case of Sunphy v. Whipple, 25 Mich. 10, the sheriff had failed to renew his bond. The constitution provided that such officer might be required by law to renew his security from

time to time, and in default of giving such surety, the office should be deemed vacant. The statute subsequently enacted provided for the renewal of the bond at certain times, but did not expressly declare the office should be vacant for failure therein. The court held that whether it was vacant or not, if the incumbent continued in office and remained sheriff *de facto*, that he was in by virtue of his election—that it was the election which justified his being treated as anything but a usurper, and that, together with his action under it, protected those interested in his official acts. The sureties were held liable.

In Placer Co. v. Dickerson, 45 Cal. 12, the county treasurer retained possession of the office after his term expired and collected money while so holding over, and his sureties were held.

The court remarked he was an officer *de facto* and that the responsibility of the sureties was the same as though the officer had, after the expiration of his term, continued in office pending proceedings by *quo warranto* to oust him, and in that case the liability would be unquestionable.

In The State v. Muir, 20 Mo. 303, the officer had removed from the State and had thereby vacated his office, but it was held his sureties were liable for the acts of a deputy after such removal.

It would seem, therefore, that because a certain contingency brings the term of office to a close and cuts off or terminates the legal right of the incumbent to perform the acts pertaining to the office, it does not follow that as to the public his acts are discredited, or that his sureties are released when his legal right to fill the office has ended. He may still be treated as an officer *de facto*. Being such, his acts are valid and binding not only as against, but also in favor of, third persons.

Again, the statute provides that the term of the constable's office shall continue four years, or until a successor is elected and qualified. Ch. 79, Sec. 1, and Sec. 10 of Ch. 103 already referred to, declare that the vacancy created by the failure to give new bond " shall be filled as provided by law," that is, by appointment or by a special election, ac-

cording to the amount of unexpired time of the original term. It has been held under similar provisions, that where the officer holds over after the end of his term, no successor having been elected and qualified, the liability of the bond will extend beyond the term for a reasonably sufficient time, within which the successor may qualify. Chelmsford Co. v. Demarest, 7 Gray, 1; Mayor of Rahway v. Crowell, 11 Vroom, 207; City, etc., of Montgomery v. Hughes, 65 Ala. 201; County of Scott v. Ring, 29 Minn. 398.

It has ever been held that in such case liability continues during a second term of the same incumbent. Butler v. The State, etc., 20 Ind. 169.

Turning again to the statute, Sec. 12, Ch. 103, it will be seen that when the officer fails to give the new bond it shall be his duty to turn over to his sureties all books, moneys, vouchers, papers and every description of property pertaining to his office, and that the sureties may enforce their rights in this respect by action of replevin. It would, of course, be within their power to proceed against him by *quo warranto* or by mandamus to require the proper authorities to call an election.

As the sureties have, by signing his bond, enabled him to possess the office and exercise its functions, and as they have these various means by which to divest him of official power, it would seem that as between them and an innocent third party, such as a plaintiff in execution, they ought, upon familiar principles, to bear the burden of his official malfeasance. We find nothing in the statute exonerating them, aside from the argument drawn from the provision that when he fails to give a new bond the office shall become vacant and the vacancy shall be filled as provided by law, which we have just discussed. Doubtless, adjudged cases may be found supporting the position of appellants, but the value of those cases may depend more or less upon local statutes. After the best consideration we have been able to give the question, we are disposed to regard the weight of reason and authority as being with the conclusion reached by the Circuit Court.

The judgment will be affirmed.