(No. 18526.— )

THE DECATUR COAL COMPANY *et al.* Appellees, *vs.* IRA W.
CLOKEY, Appellant.

*Opinion filed October 25, 1928—Rehearing denied Dec. 6, 1928.*

254

REDMON & REDMON, for appellant.

McDAVID, MONROE & MANN, for appellees.

Mr. COMMISSIONER CROW reported this opinion:

This cause comes by appeal from a decree of the Macon circuit court quieting title of appellee the Macon County Coal Company to certain coal rights. A bill of interpleader was first filed by appellee the Decatur Coal Company, admitting that it owed a balance of $1600 on the purchase price of the property here involved and asking the court to determine who was entitled to said sum. Later an amended and supplemental bill to quiet title was filed, and the court, on. motion of the Decatur Coal Company and over the objection of appellant, expunged said company's admission of liability for said sum.

The facts are as follows: In the early part of the year 1879 C. J. White and Frank Frorer entered into negotiations with the city council of Decatur and others with the object of sinking a coal shaft in the city and operating a coal mine. By the contract entered into, the city agreed to purchase a stipulated quantity of coal and to advance on

the purchase price stated sums of money as the shaft was sunk. Certain citizens agreed to procure approximately four hundred acres of coal rights for the operators if the mine should be sunk. On April 11, 1879, pursuant to the negotiations, the city council adopted a resolution authorizing the contract, and on the same day the contract was entered into and a bond of Frorer in the sum of $20,000 for its faithful performance was furnished. On May 12, 1879, Samuel C. Allen executed a deed recorded September 12, 1879, conveying approximately ninety acres of coal rights, of which the forty acres in controversy are a part, to the Decatur Coal Company, which company was at that time unincorporated and consisted of four partners, Charles J. White, Frank Frorer, David Harts and Henry Bramble. The deed was conditioned upon sinking the shaft in accordance with the agreement with the city and other conditions specified in the deed. Work of sinking the shaft was commenced in the spring of 1879 and completed in June, 1880. Mining was commenced immediately afterward, and the mine was continuously operated and coal delivered to the city under the contract from then until February 19, 1884, when the Decatur Coal Company was incorporated. On that date the members of the co-partnership and their respective wives executed a conveyance of the coal rights to the corporation. It conveyed "all right, title and interest of the grantors in and to all mining rights that they have derived in, through and by each and every lease made to them therefor under the name of 'The Decatur Coal Company,' which said leases were filed and recorded in the recorder's office of Macon county prior to February 19, 1884." The corporation thereafter continued the operation of the mine and delivery of coal to the city. The conveyance was recorded on February 21, 1884. During all of that time the members of the co-partnership were operating the mine, and thereafter until the death of Samuel C. Allen. Allen resided in Decatur and knew of the mining of the coal from the

shaft sunk by the partnership under the various lands conveyed to it, including the ninety acres conveyed by him.

On September 17, 1887, Allen sold a part of the ninety acres under which he had previously conveyed the coal and executed a warranty deed therefor to Josiah M. Clokey, father of appellant, conveying approximately forty acres of the land, the conveyance reciting: "Said warranty being made subject to a certain coal grant deed from said Allen to the Decatur Coal Company, recorded in book 84, page 165, record of deeds for said Macon county," being the book and page of the record of the deed from Allen to the coal company. The deed to Clokey was recorded on September 17, 1887.

The corporation continued the operation of the mine known as shaft No. 1 until 1916. The shaft was located north and west of the tract in controversy. A second shaft was sunk some distance to the west of the tract and was known as shaft No. 2. It was in operation previous to 1916. Allen died January 3, 1899. On February 25, 1896, he made a settlement with the Decatur Coal Company for royalty for coal mined under his grant up to that date. As evidence of the settlement he executed his receipt, reading:

"*Feby. 25, 1896.*

"Received from Decatur Coal Co. seven hundred ninety-two & 33/100 Dollars coal act. (royalty) to date, $792.33.

SAM C. ALLEN."

On February 7, 1898, Allen executed his will. The sixth paragraph recited: "Some years ago I sold the coal of over ninety acres of land to the Decatur Coal Company for forty dollars per acre to be paid for as the coal was taken out; a part of said sale has been paid, but the balance remains unpaid." After his death, January 3, 1899, his son was made executor of the will, and in the administration of the estate entered into a contract with the coal company in which it was recited that approximately twenty-five acres of the ninety acres of coal had been mined; that in cash and

coal a total of $1000 had been paid upon the sale of the ninety acres of coal. The coal company on September 22, 1899, paid to the executor, in advance, an additional $1600 upon the contract, and it was agreed that the balance of $1000 should be paid according to the terms of the original instrument. The balance due on the contract upon the settlement of the Allen estate was distributed to Edwin G. Allen, one of the devisees. Thereafter coal and cash were delivered to him until a final receipt was given by him, which reads:

"$1000.                    DECATUR, ILL., *Sept. 23rd, 1909.*
    "Received of Decatur Coal Co. one thousand and no 100 dollars, royalty in full as per agreement entered into September 22nd, 1899.
                                                    E. G. ALLEN."

Some time previous to 1916 Josiah M. Clokey made a claim against the Decatur Coal Company for the coal rights under the land deeded to him by Samuel C. Allen, but it does not appear in the record that this claim was made previous to the settlement in full with the Allens, but Armstrong, the manager of the company, asserted absolute ownership of the coal for the company when Clokey's claim was presented to him. No claim was made at that time by Clokey that he had any right or claim, by assignment or otherwise, to a portion of the purchase price agreed to be paid to Allen. By 1916 practically all of the coal under the ninety acres purchased from Allen was mined with the exception of that now in controversy. In that year some coal was mined from shaft No. 2, but little was mined in that tract until 1920, when a large quantity of coal was taken out, and mining has actively continued since that time. In October, 1916, the entire capital stock of the Decatur Coal Company was purchased by David W. Beggs, Jessie M. Corzine, Guy P. Lewis and John P. Howard, and the former stockholders and officers severed their connection with the company. Again Clokey claimed to own the coal rights in controversy in an interview with the new management,

but his claim was denied. He died intestate April 20, 1923, leaving appellant, his only child, and May L. Clokey, his widow. Clokey was a practicing attorney in Macon county and drafted the deed from Allen to himself. In 1924 appellant began making claim to the coal rights in question and threatening suit for wrongful mining, and this suit in chancery was instituted by the Decatur Coal Company by bill of interpleader to determine the rights of contending claimants to royalties. Appellant on July 9, 1925, filed his cross-bill, claiming title to and sole ownership of all the coal in question and praying for discovery as to the amount of coal taken, the cost of digging and removing it to the surface, and for an accounting, exhibiting a quit-claim deed from May L. Clokey, widow of Josiah, conveying all her interest in the coal in question to him. On August 19, 1925, the Decatur Coal Company sold its coal rights, mines and tipples to the Macon County Coal Company. On the filing of the cross-bill it joined as a party complainant in an amended and supplemental bill to quiet the title to the property in question against the claim and demand of appellant. The bill stated the several transfers of the property in controversy at great length, and the several transactions with regard to it, from the beginning substantially as heretofore related, concluding with a prayer that its title to the coal be quieted and confirmed and that appellant be enjoined from prosecuting suits with regard to said coal rights. The motion, hereinbefore mentioned, to expunge the admission of liability for the sum of $1600 was based on the averment that in truth and in fact the said sum had been paid.

Appellant by his answer to the amended and supplemental bill averred the coal to be the property of Josiah M. Clokey on and after September 17, 1887, and that by reason of failure to pay any money to Allen at the time of the grant by him to the Decatur Coal Company and the deed to Clokey in 1887, thereafter the deed to Clokey was notice to all persons of Clokey's interest, and that the Decatur

Coal Company, by reason of its failure to mine the coal under the forty acres in question for more than thirty years after the conveyance to Clokey, had lost its rights in the coal.

The circuit court by its decree found, in substance, that in equity the conveyance from Samuel C. Allen to the co-partnership conveyed the equitable title to the coal; that the co-partnership and its successor, the corporation, had faithfully carried out the terms of the sale from Allen and that it had lost no rights in the coal by *laches;* that the purchase price in full, including the sum of $1600, had been paid and no liability to pay the same existed; that Josiah M. Clokey took no right or title to the coal by his grant from Allen, and that appellant had no right, title or interest in or to the coal in question, enjoined him from prosecuting any suits at law for damages for mining the coal, and confirmed title in the Macon County Coal Company.

It is objected that the court erroneously allowed the motion of complainant to strike from the record an admission in its amended bill of liability to pay $1600 to the Allen heirs on account of coal taken from the lands described. The motion was not a part of the case on the merits heard by the master. Appellant, to obtain the benefit of his objection to the proceeding on the motion, should have made it, with the evidence supporting it, a part of the record by the certificate of the judge who heard the cause in the circuit court. This was not done, and in the absence of a certificate of evidence upon which the order was predicated the propriety of the order cannot be reviewed. It is not enough that the motion and supporting proofs are copied into the transcript. They must be authenticated by the judge whose duty it was to act upon them, by certificate over his signature. (*DuQuoin Waterworks Co.* v. *Parks,* 207 Ill. 46; *Lange* v. *Heyer,* 195 id. 420.) As matter of law, when an admission is made in a pleading at law or in chancery, if improvidently made through mistake and contrary to the actual fact, the court may, upon a proper showing, permit

the pleader to change his pleading to conform to the fact. (*Blakeslee* v. *Blakeslee,* 265 Ill. 48; *Maher* v. *Bull,* 39 id. 531; *Drainage Comrs.* v. *De La Vergne,* 298 id. 480.) From anything appearing in the record no error was committed by the court in allowing the amendment changing the issue on the question of liability to pay $1600.

Upon issues joined on the amended and supplemental bill the court referred the cause to the master in chancery to take and report the evidence, report his conclusions of law and fact and recommend a decree. The master took the evidence and reported it to the court with his recommendations. The court approved the report and a decree was entered confirming the title of the Macon County Coal Company, as prayed in the amended and supplemental bill. The orderly procedure required by equity practice upon reference to the master is (1) taking evidence; (2) preparation and presentation by him to solicitors for all parties to the controversy, of a tentative report of his findings of fact and conclusions therefrom; (3) an opportunity for all parties to file with the master objections to the report as to his findings and conclusions; (4) a supplemental report showing the decision of the master thereon after argument sustaining or overruling the objections or modifying his findings and recommendation; (5) filing his report, consisting of the evidence taken, the objections to the report, his disposition of the objections, and his conclusions and recommendation as to the decree. The report is in all things final as to questions of fact unless followed by exceptions before the chancellor within the time fixed by rule of court or by order of the court in the case. The exceptions must cover every finding of fact made by the master conceived by the solicitor to be erroneous so far as they were material and covered by the objections. No question of fact is open to review on appeal or error if not preserved in the record by the method and in the manner indicated.

Rule 14 of the rules of practice of this court requires that in all cases an appellant or plaintiff in error shall furnish a complete abstract of the record, referring to the pages of the record by numerals on the margin. The abstract must be sufficient to present fully every error relied upon. The abstract filed in this case says: "The master's report is not abstracted, for the reason that the findings in the decree follow it almost verbatim. It concludes that complainant, the Macon County Coal Company, should be decreed to have full right, title and interest in the coal claimed by Clokey." The condition of the record is such that no question of fact is open for review. The decree cannot be resorted to or take the place of the necessary report, objections and exceptions to preserve questions of fact for review. It is the result of all antecedent steps. The rule was made to be observed, and if exceptions to the application of the rule are permitted in one case, they must be permitted in all. The rules of practice of this court will be applied whether invoked or not. The decision of the chancellor on the exceptions is not open to review in this court as to any question of fact. Only questions of law are now proper for consideration upon the facts found in the decree.

The Decatur Coal Company originally was a partnership. When Samuel C. Allen executed a deed conveying the coal, including that under the tract now in controversy, to the partners in their co-partnership name, he vested in the co-partnership an equitable title to the coal. While the conveyance to the partnership did not convey the legal title because not made to a definite grantee, it gave rise to an equity in the members of the firm. It vested an equitable title in the partnership. (*Silverman* v. *Kristufek,* 162 Ill. 222; *Burns* v. *Edwards,* 163 id. 494.) The warranty deed made by Allen to Josiah M. Clokey in 1887 contained this clause: "Said warranty being made subject to a certain coal grant from said Allen to the Decatur Coal Company,

recorded in book 84, page 165, records of deeds for said Macon county; also taxes on said premises for 1887." It is argued by appellant that this clause is one saving the conveyance from the effect of the warranty and not saving the estate from the effect of the conveyance of coal previously granted. The deed executed would convey the coal if not reserved. The grantor had previously granted it. He says it was a "coal grant." When the grantee accepted the conveyance he had actual notice that the coal had been previously granted. He would not be heard to say he had no notice of the previous grant. The successors to his title are in no better situation. It is further argued that Clokey would not have paid the price for the land had he known the coal was claimed by a coal company. But whether there was an actual grant to a coal company, the clause in the deed to Clokey reserved the coal from the operation of the conveyance of the land. If not reserved the coal would have passed except as to a grantee with knowledge of a previous grant. *Barton* v. *Mayers,* 183 Ill. 360, cited and relied on by appellant, has no application to the facts of this case. It decided that equity will not correct a mutual mistake in the description in a deed as against an innocent third party without notice or knowledge of circumstances which, putting him on inquiry, would, if pursued, lead to knowledge of the mistake. Appellant deriving title by inheritance or through one deriving an interest from the immediate grantee of the land is bound by all infirmities in the ancestor's or grantor's title. Mrs. Clokey had no better title than her husband.

This court had occasion to consider the nature of mine leases as interests in real estate in *Big Creek Coal Co.* v. *Tanner,* 303 Ill. 297, and *Fowler* v. *Marion and Pittsburg Coal Co.* 315 id. 312. In the *Tanner case* the contention was that there had been no severance of the coal from the surface; that the lessee was not the owner of the coal in place underground, and that it had only the right to remove

the coal upon payment of the amount of rent or royalty stipulated in the instrument under which it claimed title. The reply to the contention was: "Coal under the soil is real estate, capable of being conveyed and held by title in fee in one person while the right to the surface is in another. The owner of land may convey the coal and mineral rights and reserve the surface, or convey the surface and reserve the mineral. When such a conveyance is made two separate estates exist, and each may be conveyed or devised or will pass by descent, each is subject to taxation, and each is real estate. (*Manning* v. *Frazier*, 96 Ill. 279; *Ames* v. *Ames*, 160 id. 599; *McConnell* v. *Pierce*, 210 id. 627.) * * * We have held that such mining right is real estate and should be assessed for taxation separately from the other part of the land. (*Simmons Coal Co.* v. *Board of Review*, 282 Ill. 396; *In re Maplewood Coal Co.* 213 id. 283; *Sholl Bros.* v. *People*, 194 id. 24; *Consolidated Coal Co.* v. *Baker*, 135 id. 545; *In re Major*, 134 id. 19.) In some of the cases cited there had been a conveyance by deed purporting actually to convey the coal, and in others a reservation of the coal from a deed conveying the land. * * * It is not material whether the defendant in error be regarded as the owner in fee of the coal in place under the ground or holds some inferior interest in the land or the coal. There is no doubt that it is the owner of a mining right in the land which has been conveyed to it by deed or lease, and is therefore to be considered, under the statute, as separated from the land."

In the *Fowler case, supra,* it was said: "A lease of the right and privilege to take away coal from the lessor's land is the grant of an interest in the land and not a mere license to take the coal. (*Consolidated Coal Co.* v. *Peers,* 150 Ill. 344; *Calame* v. *Paisley,* 296 id. 618.) Estates or interests in lands are of two kinds: estates of freehold and estates of less than freehold. A freehold estate is defined as any estate of inheritance or for life in either a corporeal

or incorporeal hereditament existing in or arising from real property of free tenure. (10 R. C. L. 647.) Estates less than freehold are, as the term signifies, estates or interests in land less than a freehold, and are of three kinds: estates for years, estates at will and estates at sufferance. The instrument in question in this case conveyed from the lessor to the lessee an interest in the lessor's land, and while this interest was subject to be forfeited upon a certain contingency expressed in the writing, this interest was not an estate for years, at will or by sufferance, but by the lease in question the lessee was given the unlimited right to go upon the land in question and mine for coal, and also given divers specific easements into and over the surface of the land for an unlimited time to the extent that the same were necessary for the working of the mine. A grant of such a writing is in legal effect a conveyance of a freehold estate.—*Watford Oil and Gas Co.* v. *Shipman,* 233 Ill. 9; *Bruner* v. *Hicks,* 230 id. 536; *Ohio Oil Co.* v. *Daughetee,* 240 id. 361."

It is contended that the Decatur Coal Company's rights are barred by *laches.* It and its predecessors in title had been in possession of this and the adjacent coal lands for forty years. Its equitable title to the tract now in controversy began with the conveyance of Allen on May 12, 1897. It afterward mined coal from its land adjacent to that tract. By the deed executed by members of the co-partnership and their wives on February 19, 1884, to the Decatur Coal Company, its title to the coal was confirmed. It might from then forward have waited to be attacked. It was not necessary, though prudent, to begin a suit in equity to quiet its title. It had been mining the coal in controversy under claim and color of title to all of the coal. When appellant threatened to begin an action to determine his right to the royalty then due, to settle for all time the question as to who was entitled to the royalty, it took the initiative and filed its bill of interpleader to determine which claimant should have

the royalty. The sum of $1600 was due and the Decatur Coal Company was willing to pay it to the Allen heirs. Clokey was threatening to bring suit to recover it under his claim of title to the coal. The Allen heirs notified the Decatur Coal Company not to pay it to him. To settle that immediate controversy between the contending claimants the bill of interpleader was filed, which, as amended, involved the legal title to the coal. The principle of *laches* has no application as a defense to the bill. The litigation was brought about by appellant's demand and the demand of the Allen heirs, through whom the Decatur Coal Company derived title. Appellant's situation is different. He was out of possession. Neither he nor his father brought suit to assert title against the assertion of the hostile title of the Decatur Coal Company and its predecessors in title, claimed for at least a quarter of a century.

The doctrine of *laches* was carefully examined and applied in *Snell* v. *Hill,* 263 Ill. 211. Previous decisions of this court were there examined and applied to a state of facts not essentially different from the facts in this case, and *laches* was held not to bar the right to relief sought by one in possession against those out of possession and asserting a hostile right. It was only through a legal or equitable title that appellant could maintain his demand. He failed, as matter of law and upon the principles of equity, to sustain his claim. The cases cited and quoted firmly establish the principles supporting the claim of appellees to the coal in question.

The decree of the circuit court confirming appellees' title is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*