State Bank and Trust Company et al., Appellees, v. Commercial Trust and Savings Bank et al., Defendants.
Appeal of Commercial Trust and Savings Bank, Appellant.

Gen. No. 40,443.

O'CONNOR, J., dissents.

Opinion filed May 22, 1939.   Rehearing denied June 6, 1939.

ROBERT N. HOLT and HARRY P. PEARSONS, both of Chicago, for appellant.

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND and HETH, LISTER & FLYNN, all of Chicago, for appel-

lees; HENRY J. BRANDT and HENRY G. O'DONNELL, both of Chicago, and JOHN J. FLYNN, of counsel.

MR. PRESIDING JUSTICE MCSURELY delivered the opinion of the court.

By their bill in chancery complainants alleged that as sureties upon the bond of C. A. Rogers, collector of the town of the city of Evanston, they paid the amount of his defalcation and sought to have defendant Commercial Trust & Savings Bank held liable, asserting that they had become subrogated to the rights of the city of Evanston, and that this defendant had permitted Rogers to withdraw the funds of the town and use them for his own purposes; upon reference to a master in chancery it was decreed that the Commercial bank was liable and that complainants were entitled to recover from it and Rogers $29,307.05, together with the master's fees and costs. The Commercial bank appeals.

The principal points raised by the Commercial bank are that the giving of the surety bonds was so tainted with illegality as to bar complainants from any recovery, that the liability of complainants as sureties to the town has not been established, that when Rogers withdrew the town funds from the Commercial bank it was obliged under the law to turn these moneys over to him on demand, that complainants never paid out any money or became obligated to do so on account of these bonds, and that the statute of limitations had run against any claim before this suit was filed.

C. A. Rogers was elected town collector for the town of the city of Evanston for a two-year term commencing in April, 1923; during this time he collected the 1923 and 1924 taxes; for each of these years he executed, as principal, the official bond prescribed by statute conditioned upon the faithful performance of all the duties required by law; the four complainants, William A. Dyche, Frank J. Scheidenhelm, Joseph L.

McNab and Clayton Mitchell, with others, went surety on these bonds; the respective sureties were severally directors of four banks then doing business in Evanston; Rogers deposited his tax collections in each of the four banks in certain proportions in ordinary checking accounts, upon which interest was credited.

It is stipulated that Rogers collected in excess of $2,000,000 in taxes for the years 1923 and 1924; he deducted from that sum and retained $44,348.63, which was commissions at the rate of 2 per cent per annum on taxes collected. Under par. 50, sec. 36, ch. 53, Cahill's St. 1921, Rogers was entitled to retain $6,000 of this amount as compensation for his services. He therefore should have turned over to the town treasurer $38,348.63. It is stipulated that Rogers did not account to the city of Evanston for any part of this amount.

In January, 1927, Rogers filed a bill of interpleader disclaiming any personal interest in part of these funds and offered to pay them into court; this interpleader was dismissed on his own motion in February, 1932. The town of the city of Evanston then filed suits against Rogers' bondsmen, who filed a bill to enjoin the prosecution of these suits; the town filed a cross bill to enforce the liability of the sureties on Rogers' bonds. This cross bill was sustained and a decree was entered against the sureties for sums totalling $24,946.12. Thereafter this amount was paid on behalf of Dyche, Scheidenhelm, McNab and Mitchell, sureties, and an order was entered satisfying the decree as to them and subrogating them to the rights of the town of the city of Evanston.

January 25, 1926, Rogers was elected cashier of the Commercial bank and on January 11, 1927, became vice president; his successor as collector qualified February 3, 1926.

December 15, 1925, Rogers first deposited $14,000 of the town funds in the Commercial bank in an account

designated by himself "C. A. Rogers, Jr., Town Collector"; June 11, 1927, the balance in this account was $22,964.35, and on that day Rogers transferred this balance to a certificate of deposit issued in his own name; the bank ticket or memorandum showing this transfer is in the handwriting of Frank C. McCabe, then assistant cashier and assistant secretary of the Commercial bank, who knew when he drafted the debit ticket that Rogers had been town collector; subsequently Rogers deposited the entire amount of $22,964.35 in his personal checking account in the Commercial bank and thereafter expended it for his personal uses.

When complainants were sued for Rogers' defalcation they learned of this transaction of Rogers with the Commercial bank; at conferences between the sureties and the representatives of the four depository banks it was agreed that Floyd E. Thompson should represent all the sureties and defend them against the claims of the town and that the four banks would advance on behalf of the sureties the sums of money necessary to discharge their liability to the town on condition that the sureties would institute suit against Rogers and the Commercial bank and repay such advances out of moneys recovered thereby.

Although able counsel for the defendant bank earnestly argues that the bonds given by plaintiffs, directors of the Evanston banks, for the purpose of securing the deposit of public funds are illegal and void, we are not disposed to agree. Manifestly Rogers must make deposits of his collections in a bank or banks, and what more natural than that these deposits be made in the Evanston banks. In *Lamb v. Fidelity & Deposit Co. of Maryland*, 257 Ill. App. 262, 277, certiorari denied by the Supreme Court, it was held that it was not unlawful for a surety to designate the bank where the funds secured by the bonds be deposited. The fact that the instant sureties were directors of the deposi-

tory banks is not important. It would be a natural thing for a surety to designate as a depository a bank with which he had some official connection, that he might observe whether the funds were properly handled. *McCollister v. Bishop,* 78 Minn. 228, 231.

It also may be conceded as in accord with common experience that the banks would credit these accounts with interest, but there was no agreement or understanding that this interest belonged to Rogers personally. This is not, as is claimed by defendant, a violation of section 81 of the Criminal Code, ch. 38, par. 193, Cahill's St. 1921, which condemns the investment of public funds by a public officer for his own personal enrichment. It has been held that a deposit of public funds in a bank in the name of the officer, as such, is not an investment or loan in violation of section 81 of the Criminal Code. *McCormick v. Hopkins,* 287 Ill. 66, 75; *Gits v. Foreman,* 360 Ill. 461, 470.

The facts in this case are not like those in *Estate of Ramsay v. Whitbeck,* 183 Ill. 550, upon which counsel for defendant place great stress. In that case the sureties were trying to recover after having made good the defalcation of a public officer; but the public funds in that case were lent to the banks and not placed on deposit in the name of the public officer. Moreover, the public received no interest whatsoever as, pursuant to an agreement between the bank and Ramsay, the interest went to Ramsay personally. The opinion says that the consideration moving from the sureties included pecuniary gain and advantage to Ramsay by the unlawful agreement to pay the interest to him. That this is the important distinction was pointed out in *McCormick v. Hopkins,* 287 Ill. 66, 75, and *Miller v. Ousley,* 334 Ill. 183, 192.

There is no evidence in the instant case of any agreement by any of the depository banks or the sureties that the interest should be paid to Rogers personally. The interest was regularly credited to Rogers' account

as collector. Also, the master so found and no objection or exception was filed to this finding. Defendant is therefore bound by this finding. *Decatur Coal Co. v. Clokey,* 332 Ill. 253, 260.

The liability of the sureties and Rogers to the town has been established by the decree entered against them. Counsel for defendant attack the defense presented in that case, saying the record shows that a compromise settlement was made. There was no compromise as to liability but only as to the amount of the judgment. The decree entered shows the court heard evidence and found that the sureties and Rogers were liable to the town of the city of Evanston. Counsel say that if they had represented the sureties they are confident they could have found a defense to the claim of the town, but this is mere conjecture; and in any event the decree is prima facie evidence of the facts therein recited.

Moreover, the facts as stipulated established the liability of the sureties. The statute (Cahill's St. 1921, par. 50, sec. 36, ch. 53) required that all excess of commissions or fees over $3,000 a year be paid into the town treasury. In other words, Rogers' commissions were at the rate of $3,000 a year and, as shown by the stipulation, he was entitled to retain out of the taxes collected $6,000. His retention of the entire amount of commissions, approximately $44,000, was a violation of his bond which made his sureties liable.

Rogers was required to pay all moneys received, except the amount legally deducted, "to the town or district treasury." The argument seems to be that, since Rogers had failed to do this and his term of office had expired, the municipality lost its rights against him, and that the only duty resting upon Rogers was to pay such funds to his successor in office, citing *People v. Toomey,* 122 Ill. 308, and *Hewes v. People,* 48 Ill. App. 439. In the first of these cases, where the sureties were released, it was held that the money which was lost had

come into the hands of Toomey after his term of office as county clerk had expired and after his successor had qualified and had assumed the performance of his duties. In the instant case the money came into Rogers possession during his term of office, before his successor was elected and qualified. In the *Hewes* case the money came into the hands of the officer after his term of office but before his successor qualified, and the sureties on his bond were held liable. In the instant case it is admitted that Rogers has not paid the money retained by him to either the town treasurer or to his successor in office.

In *Ryan v. People,* 117 Ill. 486, suit was brought on Ryan's official bond as town collector for failure to pay excess of commissions into the town treasury. The court said that the simple question was whether "the refusal of the collector to pay over to the town treasurer the two per cent commission on the city taxes, constitutes a breach of his official bond." That is the simple question presented by the instant case. The Supreme Court there concluded that the collector, Ryan, having failed to pay the money into the town treasury, had clearly breached his official bond. In *People v. Parker,* 231 Ill. 478, the town of Alton recovered judgment against Parker and his bondsmen for failure of Parker to pay excess of commissions into the town treasury; a resolution was adopted at the town meeting authorizing the satisfaction of the judgment for a nominal sum. The Supreme Court held that such a claim could not be compromised and that such excess must be paid into the town treasury.

Defendant argues that Rogers settled accounts with the county collector and received satisfaction pieces as provided by section 175 of the Revenue Act, ch. 120, par. 193, Cahill's St. 1921. The county collector had no interest in the disposition of commissions retained by the town collector. The settlement with the county collector provided for by sections 169 to 173 of the

Revenue Act was merely a determination that Rogers had paid to the proper taxing bodies the amount of taxes collected by him, less the commissions he was allowed by law to deduct from such collections. The disposition of such commissions was purely a matter between the town and Rogers, and no satisfaction piece given by the county collector could operate to discharge Rogers' statutory obligation to pay excess commissions of approximately $38,000 into the town treasury.

Defendants say that complainants have paid nothing and do not stand to lose a cent, as the respective banks with which they were connected have paid the judgment against them obtained by the town. The master found that the four Evanston banks involved advanced the money to the complainants with which to pay the judgment against them, and it was agreed that any money recovered in the litigation against the Commercial bank be repaid to the banks which had advanced the money. No objections or exceptions were filed to the findings of the master that these moneys were advancements to complainants. They are therefore binding upon the defendants. *Decatur Coal Co. v. Clokey,* 332 Ill. 253, 260.

Moreover, the evidence abundantly supports the conclusion that the banks involved advanced money necessary to pay the judgments with the expectation that the advances would be repaid out of any moneys obtained from the Commercial bank. Various technical objections are made to this arrangement. It is said that chapter 16a, par. 10, sec. 10, Cahill's St. 1921, made it unlawful for a bank to lend its salaried officials money until an application for such loan shall have been first approved by the board of directors. The record does not show that the board of directors of the respective banks did not approve of these loans, and the president of the Evanston Trust & Savings Bank testified that the board of directors instructed him to advance the money with which to pay the judg-

ment against complainants. Moreover, not all of the complainants are salaried officers and, as they were jointly and severally liable for the full amount of the decree against them, each could be made to pay to the town of the city of Evanston the full amount of the judgment.

However, the point does not seem to us to be important. Section 10 of chapter 16a provides that even if a loan is made in violation of the statute, the right to recover any such loan shall not be impaired, affected or prohibited by reason of such violation, "but such remedy shall exist notwithstanding the same."

We find no support for the proposition that in order to exercise subrogatory rights a surety must sustain some personal loss. There are abundant decisions holding in substance that it was immaterial to a defendant in what way a surety satisfied the debt provided the surety was discharged from liability to his creditor. *Pearson v. Parker*, 3 N. H. 366, 369; *Stokes v. Burlington County Trust Co.*, 91 N. J. Eq. 39; *Lord v. Staples*, 23 N. H. 448; *Hulett v. Soullard*, 26 Vt. 295; *Taylor v. Harris' Adm'r*, 164 Ky. 654; *Boone County Bank v. Byrum*, 68 Ark. 71. Many other cases might be cited, for it would seem obvious that the only party who might question the manner in which a surety satisfied a debt would be his creditor.

In the decree obtained by the town against complainants fixing the liability of Rogers, which was satisfied of record by payment from the sureties, the cause of action against the Commercial bank was, in express words, transferred by subrogation to the sureties. The only party who could question that transfer is the town.

This question touching an arrangement between the depository banks and the sureties was considered in *English v. Palmer Nat. Bank*, 202 Ill. App. 372, 375, 376, where it was held that, even if the banks had made ultra vires contracts with the sureties to reim-

burse them against loss, that was no concern of the bank which participated with the defaulting official in the misappropriation. The facts in that case are substantially like those in the case at bar; and certiorari was denied by the Supreme Court in that case.

It is well established that when a bank knowingly permits the misappropriation of trust funds deposited by a public official it is equally liable with the derelict trustee. Undoubtedly, as contended by defendant, the Commercial bank had a right to receive the deposit from Rogers as collector, and also was under duty to pay it back to Rogers as collector upon his demand. In this respect its duties were similar to that of the four Evanston banks in which the collections were first deposited. Rogers first opened his account with the Commercial bank December 15, 1925; he was still town collector, as his successor did not qualify until February 3, 1926; other officers of the Commercial bank knew that Rogers had been town collector, and that his initial deposit of $14,000 came from accounts maintained by him in other banks as town collector; his deposit ticket, in his handwriting, described himself as town collector; the signature card authorizing him to draw checks against the account designated him as town collector, and the ledger sheets of the bank designated this account as ''collector.''

He had another account in the bank in his name as an individual, so the ''collector'' account was notice to all that it was not his private, individual account. There was no attempt by evidence to show that the funds in the ''collector'' account were other than town funds. The transfer from the town collector's account to a certificate of deposit payable to Rogers personally was made pursuant to a deposit ticket in the handwriting of another officer of the bank who knew that Rogers had been town collector. In transferring these accounts to Rogers' personal account by means of the certificate of deposit and suffering Rogers' personal

account thereafter to be exhausted, the Commercial bank assisted and participated in the diversion of the trust fund by Rogers and is therefore liable. This conclusion is supported by *Massachusetts Bonding & Ins. Co. v. Standard Trust & Sav. Bank,* 334 Ill. 494, 503, 504; *English v. Palmer Nat. Bank, supra; Allen v. Puritan Trust Co.,* 211 Mass. 409, 419, 422. *People v. West Englewood Trust & Sav. Bank,* 353 Ill. 451, 464, 467, does not hold to the contrary. In that case the question involved was the power of the legislature to designate where a county treasurer should deposit public funds, and it was held that he, being a constitutional officer, has the right as the insurer of the fund to deposit the moneys that come into his hands in such banks as he may choose. Language applicable to the instant case is found in *People ex rel. Barrett v. State Bank of Herrick,* 290 Ill. App. 130, 135, where the court said: "It is also true that where checks are drawn by a trustee in his fiduciary capacity but payable to himself or to cash or currency, the bank is not justified in presuming that the money will be used by the trustee for trust purposes, and it will be bound by any information which it could have obtained had it pursued inquiry as to the use to which the withdrawals are to be put. *Massachusetts Bonding & Insurance Co. v. Standard Trust & Savings Bank,* 334 Ill. 494, 166 N. E. 123."

The five-year statute of limitations has not barred the present action. The funds were still in the possession of the Commercial bank in January, 1929, and the bill was filed in this case December 14, 1932. The funds in question were trust funds (*City of Chicago v. County of Cook,* 136 Ill. App. 120, 129) and limitations do not run until the trust is repudiated and notice of repudiation is brought to the attention of the *cestui que trust. Duckett v. National Mechanics' Bank,* 86 Md. 400, 411. In *Pennsylvania Co. for Ins. on Lives v. Ninth Bank & Trust Co.,* 306 Pa. 148, 155, it was ex-

pressly held that the statute of limitations does not begin to run in favor of a participant in the breach of trust until the discovery of the fraud. The record indicates that notice of the Commercial bank's participation with Rogers in his defalcation did not come to the town or the sureties until a few months before the suit was instituted. It has been held in a number of cases that the statute of limitations may be interposed to all actions to enforce private rights, but cannot be invoked as a defense to actions involving public rights. *Logan County Board of Sup'rs v. City of Lincoln,* 81 Ill. 156, 158; *Greenwood v. Town of La Salle,* 137 Ill. 225, 228; *Hays v. Martin,* 240 Ill. App. 340, 348.

Other points are made by counsel for defendant but they have no decisive bearing upon the main question presented, namely, Is there a liability upon a defaulting officer and an assisting bank to the sureties on the officer's bond who have made good to the municipality the loss caused by the defalcation? Stripped of all unnecessary refinements and technicalities the answer must be in the affirmative.

The judgment of the superior court is affirmed.

*Affirmed.*

MATCHETT, J., concurs.

O'CONNOR, J., dissents.

MR. JUSTICE O'CONNOR dissenting: June 11, 1927, Rogers, as collector, had on deposit in defendant bank $22,964.35 and also a personal account of $2,035.65. On that date he was given a certificate of deposit for $25,000, the aggregate of the two items.

Apparently a year and a half thereafter, viz., January 11, 1929, Rogers turned in this certificate of deposit, receiving therefor $3,500 and a new certificate of deposit for $21,500 and also a certificate for $633.33 representing accrued interest on the $25,000 certificate; and on March 18 turned in his $21,500 certifi-

cate, receiving therefor $4,118.25, being $4,000 principal and $118.25 accrued interest, and another certificate of deposit for $17,500; and on April 15 turned in the $17,500 certificate, receiving therefor $4,545.20, being $4,500 principal and $42.20 interest, and a $13,000 certificate of deposit; and on April 22 turned in the $13,000 certificate No. 199 and received a certificate payable to himself personally for the same amount. None of the money went to defendant bank to pay his individual indebtedness, as was the case in *People ex rel. Barrett v. State Bank of Herrick,* 290 Ill. App. 130.

The four persons who were sureties on Rogers' bond—Dyche, Schneidenhelm, McNab and Mitchell—in legal effect paid to the town of the city of Evanston the amount of Rogers defalcation, although all of the money came from the four banks in which Rogers had been depositing the taxes collected by him. They, the four sureties, were entitled to be subrogated to all rights the town of the city of Evanston held against Rogers. But the question is, Had they the right (after paying the amount of Rogers' defalcation according to their contracts of surety) to claim the amount of such payments from defendant bank, which at most could be said to be but slightly negligent? I think not. In my opinion the court went too far in applying the doctrine of subrogation in the instant case. *Empire Trust Co. v. Cahan,* 274 U. S. 473; *Bischoff v. Yorkville Bank,* 218 N. Y. 106; *Whiting v. Hudson Trust Co.,* 234 N. Y. 394; *Massachusetts Bonding & Ins. Co. v. Standard Trust & Sav. Bank,* 334 Ill. 494; *Bank of Commerce v. U. S. Fidelity & Guaranty Co.,* 54 F. (2d) 578; *Childs v. Empire Trust Co.,* 54 F. (2d) 981; *Bank of Vass v. Arkenburgh,* 55 F. (2d) 130; *U. S. Fidelity & Guaranty Co. v. Metropolitan Nat. Bank,* 1 F. Supp. 514.

Bouvier defines subrogation: "In this country, under the initial guidance of Chancellor Kent, its principles have been more widely developed than in Eng-

land. . . . It is treated as the creature of equity, and is so administered as to secure real and essential justice without regard to form. . . . It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter."

In my opinion, under the facts disclosed in the record it would be highly inequitable to require defendant bank to pay plaintiffs, the four sureties, the amount they had paid to settle Rogers' defalcations. Their contracts expressly required them to make good any shortage in Rogers' accounts, and equity and good conscience should not permit them to shift this burden on the bank. Their obligation was far greater than that of defendant bank.

In the instant case notice to Rogers was not notice to the bank (*Montgomery v. Commercial Trust & Sav. Bank,* 286 Ill. App. 241) and the knowledge of McCabe when the deposit was originally made by Rogers, is in my opinion insufficient to charge the bank with notice 18 months afterward when Rogers, as above stated, withdrew the money.

In the *Bischoff* case (218 N. Y. 106) it was held that a fiduciary might legally deposit trust funds in a bank to his individual account; that the bank had the right to assume the fiduciary would apply the funds to their proper purpose under the trust, and that the bank did not become privy to a misappropriation by merely paying checks drawn upon the individual's account. It was there further held that the bank's participation in the diversion of such funds might result from either acquiring an advantage or benefit directly from the diversion, or in joining in a diversion in which it was not interested, with actual notice or knowledge that the diversion was intended, and thereby becoming privy to it. In that case an executor deposited trust funds

to his individual account and afterward paid a personal indebtedness to the bank out of such funds. It was held that the bank was liable for a diversion of the amount received by it and also liable if it knew the executor was diverting the funds.

In the *Whiting* case (234 N. Y. 394) a check was deposited which described the payee as trustee, and it was held this was suggestive of a trust though not conclusive. The opinion was by Judge Cardozo. It was there said (p. 402): "The argument is that the trust company made itself a participant in the wrong when it placed the description 'special' rather than 'trustee' in the title of the account. Rights and wrongs are not built upon distinctions so inconsequent. If the word 'trustee' had been added, Eckerson would have been equally free to draw the money out and use it as he pleased. . . . A different question would be here if the trust company had received the check for its own use, as, for example, in payment of a debt (*Bischoff v. Yorkville Bank*, 218 N. Y. 106)." (p. 403): "Under the law as it then stood, a trustee did not convert the moneys of the trust by the mere act of depositing them in a bank in his individual name (*Bischoff v. Yorkville Bank, supra;* . . . Whether a trust did in truth exist, the defendant could not be sure. What it could be sure of was that the style of the account would neither change the quality of ownership nor work injury to any one." (p. 406): "The cases imposing liability in such circumstances lay down, however, a strict and at times a harsh rule, and are not to be extended. They do not reach a case where the instrument has been collected according to its tenor for the account of the very person who is there named as the payee. The transactions of banking in a great financial center are not to be clogged, and their pace slackened, by over-burdensome restrictions." The certificate of deposit issued to Rogers was for moneys be-

longing to the town and moneys belonging to him personally; after 18 months the bank could not be sure that Rogers was not entitled to the money, and it ought not be required to employ a lawyer and an accountant to ascertain the facts and the law applicable before it could pay out the moneys. "The transactions of banking in a great financial center are not to be clogged, and their pace slackened, by over-burdensome restrictions."

To the same effect is the holding of the Supreme Court of the United States in the *Empire Trust Co.* case (274 U. S. 473) in an opinion written by Mr. Justice Holmes. And our own Supreme Court in the *Massachusetts Bonding Co.* case (334 Ill. 494) in referring to the *Bischoff* case said (p. 506): "It was said in that case: 'We do not consider the question, because it is not here, as to whether or not a bank would be protected in honoring a check of a fiduciary depositor, regularly drawn upon his account as such fiduciary and presented by him, even though it had actual notice that he would misappropriate the proceeds.'" Our Supreme Court there held that the surety for a receiver could recover the amount of moneys wrongfully expended by the receiver from the depository bank. But the facts in that case show the greatest irregularity on the part of the officials of the bank as well as on the part of the receiver.