**Site of Fort Dearborn Building Corporation, Appellee,
v. City of Chicago, Appellant.**

**Gen. No. 41,369.**

141

(BURKE, P. J., dissenting).

Opinion filed March 10, 1943.

BARNET HODES, Corporation Counsel, for appellant; ALEXANDER J. RESA, WALTER V. SCHAEFER, J. HERZL SEGAL, JAMES A. VELDE and ALFRED KAMIN, Assistant Corporation Counsel, of counsel.

TAYLOR, MILLER, BUSCH & BOYDEN, JESMER & JESMER and MORRIS M. RUDICH, all of Chicago, for appellee Site of Fort Dearborn Bldg. Corp.; FRANCIS X. BUSCH, JOHN S. MILLER, CASSIUS M. DOTY, MORRIS M. RUDICH and JULIUS JESMER, all of Chicago, of counsel.

MASON & MASON, of Chicago, for certain appellees intervenors; GEORGE A. MASON, of Chicago, of counsel.

ALDEN, LATHAM & YOUNG, of Chicago, for certain other appellees intervenors; TRACY ALDEN, of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

The City of Chicago has appealed from a decree entered March 26, 1940 in an equity proceeding, brought as a representative suit, involving special assessment rebates. The cause was submitted to the trial court upon the pleadings of the parties and certain interveners, upon an agreed statement of the case, and argument.

Since May 1, 1923, plaintiff has owned real estate on the west side of North Michigan avenue, between Randolph street and Chicago avenue in Chicago. March 23, 1914, an ordinance was duly enacted by the City by virtue of the Local Improvement Act for the improvement of Michigan avenue. Pursuant to the ordinance and judgment of the County Court condemning the necessary property, an assessment for $7,727,-131.00 was confirmed, of which $5,428,884.00 was for property and $2,298,247.00 for construction. Construction contracts were thereafter let amounting to $7,-922,583.00, and on May 19, 1919, a supplemental assessment ordinance was enacted for an estimated deficiency of $6,020,465.00, including an interest item of $396,-129.00. The supplemental assessment was confirmed by judgment.

The original assessment was against private property in the amount of $3,412,957.71, and against the public $4,314,173.29; and the supplemental against private property $2,499,370.70, and against the public $3,521,094.30. March 22, 1923, a final certificate of cost was filed in the supplemental proceeding, showing total assessment $13,747,596.00, and total cost $13,747,-596.00. The cost included $90,585.63, estimate of accruing interest. April 9, 1923, an order was entered,

approving and confirming the certificate; finding that nothing remained to be repaid or deducted on the assessment; reaffirming the original and supplemental assessments; and directing the Clerk to certify the certificate to the Board of Local Improvements, and the order to the City Collector.

Bonds and vouchers were issued in anticipation of collection of the assessments. The City paid $8,087,-383.15 into the warrant as public benefits of which $931,338.33 came from the corporate fund and the balance from proceeds of general bonds. After all bonds, vouchers, interest, and indebtedness for land acquisition and damage and construction were paid in full, $341,770.32 remained in the warrant. August 22, 1930, the City transferred $267,770.32 of the balance to its corporate fund and $70,000.00 to a "Rebate Trust Fund" established June 18, 1930, for holding special assessment rebates to the City. The $70,000 was thereafter re-transferred to the corporate fund.

The decree ordered the City enjoined from paying surplus special assessment funds for any purpose other than a rebate; directed it to restore the moneys and interest thereon to the special assessment fund; directed it to cause a rebate to be declared and paid out of the surplus funds upon each assessed lot pro rata, except for attorneys' fees and costs; and directed it not to share in such distribution.

All assessments for the improvement in question are fully paid, plaintiff having paid $30,758.35.

The City contends, (1) the action is barred by limitations; (2) plaintiff's action at law is plain and adequate and equity has no jurisdiction here; (3) plaintiff has no right to prosecute a representative suit; (4) the City had no obligation under the facts here to declare or pay a rebate; (5) plaintiff is bound by the County Court's adjudication of April 9, 1923; (6) and there is no basis for interest. We are bound by the decision in *Flanagan v. City*, 311 Ill. App. 135 (Petition for

leave to appeal denied by the Supreme Court September 12, 1941) under which we must hold that plaintiff's action here is a proper representative suit, of which equity has jurisdiction, since the special assessment fund involved was a trust fund. Thus, the City's 2nd and 3rd contentions are disposed of. The statute of limitations does not bar plaintiff's suit, because since the funds involved are trust funds, the statute did not commence to run until plaintiff had notice of the City's alleged violation of trust on August 22, 1930. *State Bank & Trust Co. v. Commercial Trust & Savings Bank*, 300 Ill. App. 435. The proceeding here was instituted February 6, 1935, within the five year limit for accounting suits.

The principal question is whether the City rightfully transferred the moneys from the warrant. It claims the right to make the transfer under sections 84—93 and 84—94 of the Act [Art. 84, ch. 24, Ill. Rev. Stat. 1941 (Jones Ill. Stats. Ann. 21.2319, 21.2320)], as amended in 1917.

Section 84—94, as amended in 1917 and prior to 1931, provided that in cities over 100,000 population, the ordinance for "the assessment prescribed" may provide not to exceed 5 per cent thereof for costs, fees, deficiency in interest, etc. To sustain the City's point we must find that the amendment applied to the supplementary assessment because the original proceeding was prior to the amendment and the City does not contend for a retroactive application. We believe section 84—94, as amended in 1917, cannot be construed to permit the city to make the transfers, because the 1919 ordinance is only supplementary to the original. The 1914 ordinance "prescribed" and provided for "the assessment," the 1919 ordinance prescribed and provided for a supplemental assessment. The supplemental ordinance is made possible by section 84—59 which does not provide the 5 per cent privilege. The supplementary ordinance is an addition to the original with no greater extension.

The decree precludes the City from sharing in any rebate of the surplus. Plaintiff contends in support of the decree that in section 84—93 the legislature plainly intended that only private property should participate and that under the familiar rule of statutory construction by expressly designating "each lot, block, tract or parcel of land assessed," the legislature excluded public benefits. Proper construction of this section requires that we consider the related sections 84—39, 84—59 and 84—84 [Jones Ill. Stats. Ann. 21.2248, 21.2268 and 21.2305].

Section 84—39 provides for the apportionment of the cost between the public and private property, so that each shall bear its "relative, equitable proportion"; and "to apportion and assess" their share among the parcels of private property in "proportion" to their benefits, with none "assessed a greater amount" than benefited. Section 84—59 provides for supplemental assessments "in the same manner as nearly as may be as in the first assessment"; and that if too large a sum shall at any time be raised, the excess shall be refunded "ratably to those against whom the assessment was made." The first assessment was made against the public and the private property. Section 84—84 provides that after the improvement is completed, if the total amount "assessed for said improvement on the public and private property" exceeds the cost, the excess, less needed interest, shall be credited by reducing "proportionately" to the public and private property, the confirmation judgment; and be credited "pro rata" upon the "respective assessments"; and where the assessment is in installments, shall be credited so as to make all installments equal; and should any installment be due and payable before entry of the reduction order, credit shall be applied "pro rata" upon remaining installments. It then provides that the intent and meaning of the section is that "no property owner" shall be made to pay more than his "proportionate share" of the cost and interest.

Section 84—93 provides that should any surplus remain after final settlement with the contractor and for bonds, vouchers and interest, the City shall have the duty at once to cause a rebate on each lot, block, tract or parcel of land assessed of its "pro rata proportion" of such surplus.

A study of the language of these sections indicates that it would be unreasonable to conclude that the word "assessment" applies only to private property and not to public benefits; or that the term "assessees" as used in *Flanagan v. City of Chicago,* 311 Ill. App. 135, is limited to private property owners; or that where section 84—39 provides for the public and the property owners to bear just shares of the cost of the improvement, and where section 84—59 provides for refunding the excess "ratably" to those against whom the assessment was made—that is the public and private property owners—, and that where section 84—84 provides for crediting excesses "proportionately" upon the "respective assessments," the legislature intended in a related section 84—93 to rebate the entire surplus of assessments to the private property owners only. Such construction would attribute to the terms "proportionate," "ratably;" "pro rata," one meaning when the money is being collected, and another when it is being refunded; different meanings for the same terms in the several related sections of the same Act. The mention of one thing does not exclude others when the context shows a different intention. (Lewis' Sutherland Statutory Construction, 2nd Ed. Vol. 2, Sec. 495.) It certainly cannot be said that where section 84—84, in referring to the intent and meaning of that section, says that no property owner shall be required to pay a greater amount than his proportionate share, that the legislature thereby intended that the general public should be required to do so. To so hold we must approve what is plainly an unjust proportion. We

should not apply that rule of construction in aid of an injustice.

To construe the provision as we are constrained to do, requires supplying the words, "to the public and" preceding the words, "upon each lot" and substituting the word "their" in lieu of the word "its" preceding the words "pro rata." Words may be supplied where necessary to give effect to the intent of the legislature and avoid repugnancies or inconsistencies with that intention. (Lewis' Sutherland Statutory Construction, Vol. 2, Section 383; and *Loverin v. McLaughlin,* 161 Ill. 417, 430.) We believe the construction arrived at is proper and just and we are mindful that tax laws in case of doubt should be construed most strongly against the government (*People v. Sears,* 344 Ill. 189) and that the Local Improvement Act must be "faithfully followed and strictly construed." *Monahan v. City of Wilmington,* 328 Ill. 242. The surplus is made up of balances of money contributed by the general public and private property owners in shares determined *finally* (sec. 84—47) by the County Court to be just according to the percentage of the total benefit, each class assessed, received. The difference in character of the benefits is immaterial. Unless the surplus is rebated in the same percentages, the relation of benefits and assessments of each class will be disturbed, and the *final* determination of the County Court made ineffective. We cannot say because there is a surplus, that the benefit to the public is thereby increased. It is true that in 1917 and in 1931, section 84—93 was amended and the legislature did not broaden the provision for rebate, but equally true that it did not either remove the plain inconsistencies in the several related provisions. The noun "rebate" as used in these sections means a remission or payment back. Webster's New International Dictionary, 2nd Ed. To allow plaintiffs a greater percentage of the

surplus than their percentage of the cost, would be paying them moneys out of the fund which they did not pay in and, therefore, not a payment back and not a rebate. *Savage-Scofield Co. v. Tacoma*, 56 Wash. 457, 105 Pac. 1032; Words and Phrases (2nd) Vol. 4, p. 196., In our opinion under a proper construction of sec. 84—93 the general public and the private property owners should share in the rebate according to the same ratio that controlled the apportionment of the cost of the improvement between them.

The City contends that the court order of April 9, 1923, approving the certificate of completion is binding on plaintiff and, having found no surplus existed, the only possible rebate is the "accruing interest" item of $90,585.63 set up in the certificate. All bonds, vouchers and interest were paid February 1, 1926. The parties stipulated that after such payments, the net remaining in the fund was $340,515.30. We hold that this net amount is the amount of the surplus to be rebated under section 84—93.

The City further says, in effect, that it is not liable for interest on moneys found to be wrongfully transferred because there is no showing that the plaintiff demanded a rebate and, therefore, there can be no holding that the City was guilty of unreasonable and vexatious delay. Under section 84—93, the plaintiff was entitled to, but did not, demand its pro rata share of the surplus funds "at once" after February 1, 1926. It is apparent that the trial judge had this in mind when he ordered interest not from February 1, 1926, but from August 22, 1930, on which date the City transferred the funds. The City, to the extent of the funds transferred to which it was not entitled, diverted trust funds. It is obvious from the issues made in the case that any demand by plaintiff after that date would have been unavailing. We believe, under the rule in such cases in this State and upon which the parties here apparently agree, that plaintiff was entitled to

interest at 5 per cent from August 22, 1930 upon the moneys wrongfully transferred. It was money held for plaintiffs, which the City in good conscience should not have diverted (*Conway v. Chicago,* 237 Ill. 128), and we cannot say that the City should be absolved from blame because it misconstrued the 1917 amendment.

For the reasons herein given the decree of the Circuit Court is hereby reversed with directions to the trial court to modify the decree by finding that the general public and private property owners benefited are entitled to share in the rebate in the same ratio that they contributed to the fund, the private owners participating pro rata in their share; by reducing the restoration, rebate payment and interest orders consistent with that ratio; and in such other respects as shall be necessary to give effect to this decision.

*Decree reversed and remanded with directions.*

HEBEL, J., concurs.

MR. PRESIDING JUSTICE BURKE dissenting in part: The City contends that if a rebate be payable, it is entitled to share therein, and argues that as a municipal corporation and not as the owner of any lot, block, tract or parcel of land specially benefited by or specially assessed for the cost of the North Michigan avenue improvement, it is entitled to participate in any rebate declared and paid under the provisions of section 93 of the Local Improvement Act (sec. 84—93, ch. 24, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 21.2319]) out of the surplus special assessment funds which remained in the hands of the defendant after payment in full of all costs incurred for the making of the improvement. Defendant contends that its share should be in proportion to the amount paid by it out of its general bond funds and other general tax funds as "its public benefit assessment" for the cost of the improvement. I cannot agree with the position

of the City on this point. Section 93 provides that if upon settlement with the contractor and full payment of all vouchers or bonds, there shall be any surplus remaining in such special assessment, it shall be the duty of the proper authorities of the City to at once cause a rebate to be declared upon each lot, block, tract or parcel of land assessed, of its pro rata proportion of such surplus. I agree with the plaintiff that section 93 is the controlling section of the statute in this case. Nowhere is there a suggestion that any such rebate should be paid out of such surplus on account of or by relation to the so-called "public benefit assessment" which the law requires to be paid out of general tax funds because of the general public benefits accruing from the improvement. The legislative mandate contained in section 93 is clear and unambiguous. In my opinion the court was right in decreeing that no portion of the rebate be paid to the City of Chicago.

I agree with the contention of the City that there is no basis for the allowance of interest in this case. Here the money was rightfully obtained by the City but wrongfully withheld. The City, in opposing the claims of the property owners, did so in good faith. Under the circumstances, it cannot be said that there was an unreasonable or vexatious delay.