508

Howard F. Hobbs, Appellant, v. H. M. Gousha Company, Appellee.

Gen. No. 40,390.

Opinion filed December 13, 1939.

GARIEPY & GARIEPY, of Chicago, for appellant; FRED A. GARIEPY, VICTOR P. FRANK and OWEN RALL, all of Chicago, of counsel.

MAX MURDOCK, of Chicago, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Plaintiff filed his complaint in which he alleged that on November 1, 1933, plaintiff and defendant entered into a written employment contract, which reads as follows:

"Agreement made and entered into this 1st day of November, A. D. 1933, by and between H. M. Gousha Company, an Illinois corporation, with its principal office in the City of Chicago, State of Illinois, party of the first part, hereinafter called the 'COMPANY', and Howard F. Hobbs, of Akron, Ohio, party of the second part, hereinafter called 'HOBBS';

"Whereas, the party of the first part is engaged in the manufacture and sale of automobile road maps and is desirous of combining the good will, ideas and methods of the said Hobbs and the Hobbs Guide Company and acquiring the right to use his data, drawings, copyrights, engravings, records, correspondence and methods in conjunction with the said Company's maps; all of which is now the property of the said Hobbs and known as Hobbs Guide Company, and,

"Whereas, the said Hobbs is the owner and publisher of a series of road guides known as the 'Hobbs' Guide' and has conceived an idea for the combining of his guide data and service with the automobile road maps of the said Company and desires to enter the employment of the said Company and to give it the right to use the said 'Hobbs' Guide' methods and to give to the said Company the right to use any and all data, draw-

ings, copyrights, engravings, records and correspondence heretofore used by the said Hobbs under the name of 'Hobbs' Guide Company';

"Now, Therefore, this agreement witnesseth:

"That for and in consideration of the sum of One Dollar, lawful money of the United States, receipt whereof is hereby acknowledged, and in further consideration of the mutual covenants and conditions hereinafter expressed, the parties to these presents agree:

"(1) The Company hereby engages the services of the said Hobbs, together with the right to the good will of the Hobbs' Guide Company, including the right to use all data, drawings, copyrights, engravings, records, correspondence and methods heretofore used by the said Hobbs in conducting his business for a period of one year from the date of this agreement and for such further time as is hereinafter provided for, subject, however, to the right of either party to terminate this contract as hereinafter provided.

"(2) The said Hobbs hereby agrees to make available to the said Company all data, drawings, copyrights, engravings, records, correspondence and methods pertaining to the business heretofore known as 'Hobbs' Guide', including the right to use any and all information heretofore compiled by the said Hobbs, without restriction except as hereinafter limited in this agreement. The said Hobbs agrees to devote his entire time, skill, energy and attention and the best of his ability to the business of the Company.

"(3) The said Hobbs during the time of his employment shall have charge of the formation and organization of a department or division in the Company's business to be known as the Hobbs' Guide Division, or some similar appropriate name, and agrees to use his best efforts in cooperating with the executives of the Company in the promotion and exploitation of tourist guide information of the said Department and the preparation of tourist guide information to be employed by the

Company in conjunction with its maps, and to train the personnel employed by the Company in such Department and further agrees to perform all other duties necessarily involved in such work, including such specific duties as the Board of Directors shall from time to time reasonably require of the said Hobbs.

"(4) As and for compensation for the services so to be rendered by the said Hobbs and as and for the right to use the said Hobbs' Guide heretofore compiled by the said Hobbs, the Company agrees to pay to the said Hobbs the sum of Three Hundred Dollars ($300.00) per month salary and Five Hundred Dollars ($500.00) per month traveling expenses, beginning on the day of the date of this contract and payable on the first and 15th day of each month thereafter as long as this contract shall remain in force. It is the spirit of this agreement, however, that the Company expects to readjust the compensation of the said Hobbs annually on or about the date of the said contract and that if the net profits of the Company are substantially and materially increased as a result of the efforts of the said Hobbs and the application of the Hobbs' Guide material to the Company's business, then the Company agrees to recognize the value of the said Hobbs' efforts and to readjust his compensation by bonus or otherwise as the parties hereto may agree.

"(5) It is expressly agreed, however, that the Company shall have the right after one year hereafter to dispense with the services of the said Hobbs for good cause or that said Hobbs may resign upon the giving of notice hereinafter provided for, or if for any reason the said Hobbs becomes permanently physically disabled or discontinues his connection with the Company, then the Company shall have the right to continue to use the idea and material heretofore embodied in the Hobbs' Guide and any additions or improvements therein made by the said Hobbs while in the employ of the Company, whether copyrighted by the said Hobbs

or otherwise, for such period of time as the said Company shall so desire, upon the following terms and conditions:

"(a) In the event that the said Hobbs has been in the employ of the Company for the period of one (1) year, but less than two (2) years, the said Company agrees to pay to the said Hobbs, if living, or to his personal representative if the said Hobbs is not living, the sum of Three Thousand Dollars ($3,000.00) per year for each year or part thereof that the Company used the said Hobbs' Guide material until the sum of Fifteen Thousand Dollars ($15,000.00) shall have been paid.

"(b) In the event that the said Hobbs has been in the employ of the Company for the period of two (2) years, but less than three (3) years, the said Company agrees to pay to the said Hobbs if living, or to his personal representative if the said Hobbs is not living, the sum of Three Thousand Dollars ($3,000.00) per year for each year or part thereof that the Company uses the said Hobbs' Guide material until the sum of Twenty-Four Thousand Dollars ($24,000.00) shall have been paid.

"(c) In the event that the said Hobbs has been in the employ of the Company for the period of three (3) years, but less than four (4) years, the said Company agrees to pay to the said Hobbs, if living, or to his personal representative if the said Hobbs is not living, the sum of Three Thousand Dollars ($3,000.00) per year for each year or part thereof that the Company uses the said Hobbs' Guide material until the sum of Thirty Thousand Dollars ($30,000.00) shall have been paid.

"Subject to the condition for every year exceeding three (3) years that the said Hobbs is employed by the Company on a salary or other basis of compensation, that the obligation of the said Company is to pay the

Three Thousand Dollars ($3,000.00) per year as specified in Paragraph 'c' above shall be reduced at the rate of Three Thousand Dollars ($3,000.00) per year in direct proportion to the number of years over and above the three (3) year period that the said Hobbs is so employed by said Company.

"(6)  The said Hobbs expressly agrees that if for any reason whatsoever the Company discharges him or he resigns or discontinues his employment with the Company and so long as the Company continues to employ the idea and material contained in the Hobbs' Guide and continues to pay to the said Hobbs or his personal representative the sums of money hereinbefore agreed to be paid in Paragraph 'C,' that the said Hobbs will not either alone or in partnership with any person or persons whomsoever, or in any other form of business association, carry on the trade or business of furnishing tourist guide information or any branch thereof within the confines of the United States of America at any time within the period during which the Company shall continue to use and employ the ideas and material of the Hobbs' Guide as provided in this agreement.

"(7)  It is further agreed that whenever the Company discontinues the use of the Hobbs' Guide ideas and the material contained in the Hobbs' Guide and discontinues the making of the payments set forth in Paragraph 5, that then all essential data, records, correspondence, drawings, engravings, copyrights used in conducting and publishing the Hobbs' Guide Department in the said Company shall be considered to be the property of said Hobbs and the Company further agrees that all property rights therein shall revert to the said Hobbs and that they will, upon request execute proper instruments transferring title to any and all copyrighted matter or other property to the said Hobbs and he shall then have the right to reengage in

competitive business as before and the said Company
further agrees that in the event they discontinue the
sale of the Hobbs' Guide idea and material as afore-
said, that they will discontinue that branch of their
business and that they will not imitate or duplicate the
Hobbs' Guide or otherwise compete with the said
Hobbs.

"(8)  It is further agreed that for the period of one
year from the date of this contract that the said Com-
pany shall show by suitable markings that the Hobbs'
Guide material and data used on Gousha maps shall
be identified by some marking as 'Hobbs' Guide' or
some other similar designation indicating that H. F.
Hobbs is the author thereof.  The Company further
agrees that the existing policy of the Hobbs' Guide to
tell the truth without fear or favor and the present
policy of not selling ads, etc., to hotels, camps and eat-
ing places shall not be changed without the consent of
H. F. Hobbs.

"(9)  The Company agrees that for the protection
of the said Hobbs during one year from the date of
this agreement that it will cause to be issued a life
insurance policy, in a reputable insurance company, on
the life of the said Hobbs and will pay the premium
thereon for one year from the date of this agreement.
The beneficiary named in said policy shall be anyone
designated in writing by the said Hobbs and shall pro-
vide for the payment of the sum of Fifteen Thousand
Dollars ($15,000.00) in installments of Three Thousand
Dollars ($3,000.00) per year for five (5) years to be
paid to said beneficiary if the said Hobbs shall die
within the period of one year from the date of this
agreement, subject to the condition that if the employ-
ment of the said Hobbs by the Company shall be ter-
minated before one year from the date of this contract,
the Company reserves the right to cancel such insur-

ance as of the date of the termination of said employment.

"(10/14/33 This paragraph is subject to further discussion. H. F. Hobbs, J. J. Krez)

"It is expressly agreed, however, that on and after one year from the date of this contract either party shall have the right to terminate this agreement with or without cause by giving to the other party three (3) months' previous notice in writing, it being further agreed that if the Company terminates the employment of the said Hobbs without good and sufficient cause and elects to continue to use the idea and material embodied in the Hobbs' Guide as provided in Paragraph 5, that they do agree to pay therefor the sum of Three Thousand Dollars ($3,000.00) per year for each year or part thereof that the Company uses the said Hobbs' Guide material, until the sum of Thirty Thousand Dollars ($30,000.00) shall have been paid, anything in Paragraph 5 of this agreement to the contrary notwithstanding.

"In Witness Whereof the said Hobbs has set his hand and seal and the said Company has caused these presents to be executed in its name by its President and Secretary and the seal of the Company affixed the day and year first above written.

"Howard F. Hobbs (Seal)

H. M. Gousha Company

By ————————————

President

By John J. Krez, Secretary."

that he entered into employment under the contract and acted thereunder until February 5, 1936, when defendant discharged him without cause, in violation of the agreement; that he performed all the duties imposed upon him under the contract. Plaintiff further alleged that prior to the year 1921 he conceived the

idea and use of the "Hobbs Guide"; that in 1921 he caused the publication and circulation of the guide to be made; that the guide was used and sold throughout the United States and had a large circulation among travel bureaus, automobile tourists, gasoline companies and in the automobile business or trade; that the guide was entirely original in type and information therein given; that the "Hobbs Guide" has always informed the reader truthfully "without fear or favor" about routes, hotels, camps, eating places, mileage and road surfaces and gave other authoritative tourist information; that in 1933 the guide was nationally known and was used extensively throughout the United States; that plaintiff's earnings, profits and income from the guide for the years previous to 1933 were about $15,000 per year; that at all times before and on November 1, 1933, he was, and at the time of filing the complaint, still was the sole owner and publisher of "Hobbs Guide" and the numerous data and material, drawings, records, copyrights, methods and correspondence combined and used exclusively in forming and publishing the guide; that the materials and good will were of great value; that since becoming employed by defendant, he made available at all times to defendant, as requested, the records, correspondence and methods pertaining to the business of the guide, and the right to use any and all information compiled by plaintiff without restriction; that at all times prior to his discharge he devoted his entire skill, time, energy, attention and best efforts to defendant's business and performed all duties and work required of him by the agreement; that since November 1, 1933, defendant used and was at the time of filing the complaint, using and selling, publishing and offering for sale to the public and oil companies said "Hobbs Guide," bearing said name on the face of the guide and also bearing the name "Gousha Guide"; that up to January 15, 1936, defendant paid plaintiff the sum of $800 per month as

and for his services; that on February 6, 1936, plaintiff made formal demand on defendant to elect concerning the redelivery of the "Hobbs Guide"; that defendant continued to employ the idea and material contained in the "Hobbs Guide" and is daily selling and attempting to sell plaintiff's maps, engravings, drawings and the "Hobbs Guide" to the public and to several oil companies for large sums of money; that the engravings, materials, drawings and maps and the "Hobbs Guide" retained by defendant, are of great value to plaintiff and are without duplication on the market; that by reason of the agreement plaintiff will be prevented from seeking to engage in any employment in competition with defendant in the sale and use of the idea of the "Hobbs Guide"; and plaintiff prays that he be awarded a judgment against defendant for $3,200 for services from January 16, 1936, to the date of the discharge of plaintiff and thereafter as by the terms of the contract provided; and prays for relief in the alternative that if defendant elects to retain the "Hobbs Guide" that defendant be required to pay the sums of money provided for in the contract; that if defendant consummates the sale of the guide that the defendant be decreed to pay plaintiff the sum of $30,000; that if defendant elects not to retain the guide, that defendant be required to execute all proper instruments transferring title to the "Hobbs Guide" and all of plaintiff's property to the plaintiff; that defendant be restrained from further using and selling plaintiff's property and be required to elect concerning its intention to retain and use plaintiff's property; that the court award plaintiff judgment from time to time for such sums of money as accrue to plaintiff from time to time under the terms of the contract and the conduct of the parties; that he be awarded judgment in the sum of $30,000 or such other sum as under the agreement, is just and proper, and that he be awarded an injunction restraining defendant from selling or

offering for sale or from using plaintiff's maps, drawings, the "Hobbs Guide," road maps, correspondence, engravings, copyrights, all data, books and records of accounts receivable and all materials of plaintiff in defendant's control and possession, under said agreement, until the further order of the court. The complaint was verified by an oath as to its truth by plaintiff.

Defendant filed its answer on March 9, 1936, and in paragraph 2 admitted the execution of the contract set out verbatim in the complaint; admits the plaintiff entered into the employ of defendant on November 1, 1933, denies that the employment continued to February 5, 1936, and states that the employment was terminated on January 5, 1936, and that on that date defendant discharged plaintiff for good and sufficient cause, said cause being that the plaintiff then and theretofore failed and refused to perform his duties in said employment. Paragraph 4 of the answer denied that the contract was proposed and drafted by defendant and alleged that the terms were proposed and prepared by plaintiff, and that defendant complied with all of the terms and conditions of the contract. The answer admitted that plaintiff on November 1, 1933, delivered and made available to defendant certain data, records, correspondence and material theretofore pertaining to the "Hobbs Guide"; that defendant had not used the material delivered and is not now making use thereof, but has offered and now offers to return the data, records, correspondence and material to the plaintiff; admits that it paid plaintiff the sum of $800 per month continuously from November 1, 1933, to and including January 15, 1936; that the payments were $300 per month salary and $500 per month traveling expenses; that plaintiff had not earned any salary and had not incurred any traveling expenses since January 15, 1936; that since November 1, 1933, plaintiff caused upwards of $100,000 of the

funds of the defendant to be expended in and about collecting and compiling data, drawings, copyrights, engravings and other records relating to tourist guide information and in printing parts of the same under the title "Gousha Guide" with the name of the plaintiff printed thereon, with the purpose and intention of making use of the same for his own private purpose and for his own benefit and profit; that plaintiff neglected, failed and refused to exploit the same for the benefit and profit of the defendant; that plaintiff neglected, failed and refused, though requested, to cooperate with defendant in an effort to sell the guide, or to find any market or customer for the publication, materials or service; that on February 6, 1936, plaintiff served a written demand on defendant, requiring defendant to state its intention and election with regard to the use of the "Hobbs Guide" and material within three days. The answer denied that defendant was selling or attempting to sell any of the property of plaintiff and averred that it was offering for sale its own property, publication and service, and denied that plaintiff was entitled to any of the relief sought. The answer is signed by the corporation by E. A. Dougherty, its assistant secretary and treasurer. The answer is verified by an affidavit by E. A. Dougherty, who swears that she is authorized to sign the answer, and "to make this affidavit on behalf of said company." The affidavit further states that she has read the answer and that she is acquainted with the matters therein stated and that the same is true in substance and in fact.

The cause was referred to a master in chancery, who began hearing witnesses on March 19, 1936. Proofs were closed on August 5, 1936. The master made his report and recommendations on July 19, 1937, wherein he found that defendant discharged plaintiff without good cause; that under paragraph 10 of the contract plaintiff is entitled to receive the sum of $3,000 per

year for each year that defendant used the "Hobbs Guide" material until the sum of $30,000 shall have been paid; that at the time of his report, plaintiff was entitled to the sum of $3,000 for the year beginning 1936, and for the sum of $3,000 for the year beginning 1937, and that further there will be due from time to time the sum of $3,000 for each year during which the company continues to use Hobbs' material until the sum of $30,000 shall have been paid. He recommended that in any decree entered, the court retain jurisdiction to assess the amounts from time to time as damages to the plaintiff under the terms of the agreement, and that when defendant elects to discontinue the use of the "Hobbs Guide" and materials, then and at that time defendant be required to execute instruments transferring title to any and all copyrighted matter or other property, and to return to plaintiff all the essential data, records and correspondence, and that thereupon plaintiff shall have the right to enter into the trade or business of furnishing guide information. He found that defendant owed plaintiff $400 as salary for the month of January, 1936; $2,400 as salary for the months of February, March and April, 1936, and $6,000 for the years beginning May 1, 1936 and May 1, 1937, at $3,000 per year on the basis that defendant had not elected to discontinue the use of the "Hobbs Guide," and recommended that a judgment be entered in favor of plaintiff, and that the court retain jurisdiction to enter judgment each year for such additional amount as becomes due under the terms of the contract if defendant continues to use the "Hobbs Guide," and that the court also retain jurisdiction for the purpose of entering an order enjoining defendant from competing with the plaintiff in the business of furnishing the "Hobbs Guide" or a guide similar thereto upon defendant electing to discontinue the use thereof. Defendant filed 61 objections to the master's report, all of which were overruled. Thereafter, by an order

of the court, the master was required to receive in evidence certain exhibits, known as defendant's exhibits 114 and 115, which he had theretofore declined to receive, and to report thereon. Exhibit 114 contained the concluding paragraph of the contract, but was not signed, and exhibit 115 was page 7 of the contract, the same as it appears in the copy attached to the complaint. There was also a special reference to the master on a dispute as to whether the contract introduced into evidence was in the same condition at that time as it was when it was so introduced. The master found it was in the same condition and that no changes had been made therein. On February 8, 1938, the court entered an order that paragraph 2 of the defendant's answer "be stricken out of said answer and that said original paragraph 2 be treated as no part of the record, and that defendant have leave to file instanter the amended paragraph 2 now presented to the court, which amended paragraph 2 is now taken to be a part of said answer in lieu of said paragraph so stricken." The amendment to defendant's answer was filed on February 8, 1938. It recites that pursuant to leave of court first had, it amends its answer by striking out paragraph 2 and inserting in lieu thereof the following:

"Defendant admits that both the plaintiff and John J. Krez as secretary of the defendant signed the page numbered 7 of the purported contract attached to the complaint herein, and the defendant further admits and states that, at the same time the plaintiff and the said Krez further signed on the same page the endorsement 'This paragraph is subject to further discussion', but defendant denies that such signing was on November 1st, 1933, but states that the same was on October 14, 1933, and defendant further denies that said sheet so signed was then or at any other time joined to or part of the purported contract set forth in said complaint with the knowledge or consent of

this defendant, and denies that said purported contract in writing was ever delivered or entered into by this defendant, and denies that the document so signed by plaintiff and said Krez as aforesaid ever constituted a contract between plaintiff and defendant. Defendant admits that plaintiff entered defendant's employ but denies that such employment was under said purported contract set forth in said complaint, and defendant denies that said employment continued to February 5, 1936, but states that, on January 15, 1936, the said employment was terminated in that, on said date, the defendant discharged the plaintiff for good and sufficient cause, said cause being that the plaintiff then and theretofore failed and refused to perform his duties in said employment, and defendant states that plaintiff thereupon and thereafter continuously persisted in such refusal.

> "The H. M. Gousha Company,
> a corporation
> Defendant
> By Eleanor A. Dougherty."

It is verified by Eleanor A. Dougherty, who swears that she is assistant secretary and treasurer, and is authorized to sign the aforesaid answer and to make the affidavit, and that she "has read the aforesaid answer and is acquainted with the matters herein stated and that the same are true in substance and in fact." It will be observed that the amended answer constitutes a departure from the defense theretofore asserted. During the hearings of voluminous testimony before the master, both parties proceeded on the basis that the contract was a valid contract. Under the supplemental reference the master again found in favor of plaintiff. Defendant again filed objections, which were overruled. The objections stood as exceptions and the chancellor entered a decree sustaining the exceptions and dismiss-

ing the complaint for want of equity, from which decree this appeal is prosecuted.

Plaintiff's theory is that the written contract sued on is valid and binding and that under its terms, he is entitled to the moneys found due him by the master; that his discharge was wrongful and caused by the desire of a new management to cut down expenses; that the marginal notation opposite the paragraph setting forth plaintiff's rights in the event of a termination of the agreement with or without cause, "This paragraph is subject to further discussion," was not intended to affect and did not affect the validity of the contract; that if defendant had any rights under such marginal notation it waived them by acting under the contract for 26 months without protest; that gaining possession of plaintiff's valuable tourist guide business by treating such contract as valid estops defendant to contend that the contract never existed, and that the trial court erred in sustaining the exceptions to the master's report and in refusing to enter a decree in favor of plaintiff as recommended by the master. Defendant's theory of the case is that plaintiff's employment by defendant was terminated for just and ample cause, that cause being the failure and refusal of the plaintiff to perform his duties; that plaintiff entered defendant's employ under a parol contract which did not include the "confiscatory" provisions on which the present claim is based; that the alleged written contract with those provisions was later formulated and proposed by plaintiff but was never accepted by defendant, and that the terms thereof are not a proper subject for specific performance. The evidence introduced at the hearing is quite voluminous. Without pausing to state any portion of the evidence in detail, it will suffice for us to say that we have given it careful consideration.

Plaintiff in 1920 was the Pacific coast representative of Rand McNally and Company. H. M. Gousha, who later organized and became president of defendant corporation, was then the sales manager of Rand McNally and Company. Plaintiff's duties with Rand McNally and Company were to prepare and sell its California map. In 1921 plaintiff conceived the idea of compiling automobile tourists guides and he issued such a guide under the name of ''Hobbs Guide.'' Thereafter in 1923 he made arrangements with the Mohawk Rubber Company, under which that company sponsored the guide under the name of ''Mohawk Hobbs Guide.'' The guides were copyrighted in the name of the Mohawk Rubber Company. The copyrights were assigned to plaintiff when the agreement was terminated in 1931. In October, 1931, he entered into an agreement with the Commercial Printing and Lithographing Company, whereby that company agreed to furnish the capital for the production of the ''Hobbs Guide'' for a period of two years, by advancing funds at the rate of 50 cents per mile of road covered by the guide. Under the latter arrangement, the plaintiff sold the B. F. Goodrich Company the ''Hobbs Guide'' under its requisitions. Plaintiff's net income from the guide for 10 years prior to November 1, 1933, exceeded $15,000 annually. The guides were published in connection with publicity by national advertisers. On September 17, 1930, Hobbs purchased from the Mohawk Rubber Company the material then remaining on hand. He spent the following 11 months seeking another ''sponsor,'' which he found in the Goodrich Company. With them and with the Commercial Printing and Lithographing Company he made an arrangement similar to the one with the Mohawk Rubber Company. The ''sponsors'' furnished all the money. Plaintiff had invested a small amount before starting with the Mohawk Rubber Company, but thereafter he invested

nothing. On September 30, 1933, plaintiff sought employment with defendant. His pay and expense allowance began October 1, 1933. The "Hobbs Guide" consisted of a series of pamphlets covering the main motor trunk routes of the United States and contained distinctive and original information not found in any other guide or obtainable from any other source, such as the profile and condition of the road, the grading of hotels, eating places and camps, etc. At the top of each page was a picture or chart that revealed at one glance, every bad stretch of road, whether the country was level or hilly and how far apart each town was, and the points of historical interest on the route. The selection of the best routes was indicated and the guide commented on the physical and moral cleanliness of tourist camps and whether the hotels were old or new. The work of compiling the guides took 13 years of research in traveling over roads and investigating conditions and was done entirely under the supervision and direction of the plaintiff. Prior to November 1, 1933, there was no other automobile guide on the market giving the type or kind of information contained in the "Hobbs Guide." It was considered by the tourist bureaus and the public as reliable and dependable. Defendant, H. M. Gousha Company, published automobile road maps. Prior to November 1, 1933, it published no road guides. Defendant did not have the information, nor did it publish a guide similar to the "Hobbs Guide" prior to November 1, 1933. Plaintiff discussed the question of merging his guide and defendant's map with the directors of defendant corporation. The parties discussed the drafting of a contract and the vice president of defendant corporation suggested that plaintiff see defendant's attorney. After a discussion between the parties, defendant's attorney prepared a draft of the contract. The contract consisted of seven pages and was signed by the vice

president and plaintiff on October 14, 1933. Plaintiff took all the sheets of the duplicate of the contract and the vice president retained all of the sheets of the original of the contract. Prior to the execution of the contracts, the vice president and plaintiff signed the following handwritten notation on the margin opposite the last paragraph on page 7: "10/14/33 This paragraph is subject to further discussion." Hobbs entered upon his duties and from November 1, 1933, to the end of that year, he spent one week in the office editing copy. In 1934 he spent five weeks in the office editing copy and preparing an exhibit for the Ford Motor Company. In 1935, he spent six months in the office supervising guide production and editing copy and drawings. At the request of defendant, he came from the west coast about the middle of January, 1936. The balance of the period he was traveling on the road training field men and procuring data for the guide. During that period he traveled throughout and covered all the States of the Union. Originally, the parties contemplated producing a series of guides, combining the "Hobbs Guide" with defendant's map, in much the same form as the "Hobbs Guide" pamphlets. However, it was later decided to issue a much more pretentious guide and map with an elaborate cover design and of entirely different dimensions. The plan was to issue a series of 15 guides to cover a quarter of a million miles of road, to be marketed by obtaining a national advertiser as a sponsor, and by circulating the guide through automobile clubs, book stores, news stands and by mail. The plan for marketing the guide was vague and nothing very definite was decided. Plaintiff constantly urged defendant to secure a circulation manager to market the guide through newsstands and tourist bureaus and thus make it possible to secure a national advertiser to sponsor the guide. Five of the fifteen guides were completed and printed

and the material for the remaining ten guides was practically complete with the exception of some slight checking of some road data. The cost to defendant of operating the Hobbs Division was estimated at $128,000. Until January 15, 1936, the relations between the parties were amicable, there was no complaint as to plaintiff's work, he received his salary, he co-operated with the company and the company co-operated with him. On January 9, 1936, Robert Erving became treasurer and general manager of defendant corporation. He had not been connected with the corporation prior to that time. In December, 1935, Erving learned through hearsay that plaintiff had a contract with defendant. Erving saw the contract for the first time on January 10, 1936. Erving had purchased a large block of stock in the corporation and from that time on was dominant in dictating the policies of the corporation. On December 26, 1935, Gousha telegraphed plaintiff, who was on the Pacific coast, to be in Chicago not later than January 10, 1936, to work out complete plans for finishing and merchandising the guides. Plaintiff arrived in Chicago on January 13, 1936. A day or two after arriving in Chicago, plaintiff saw Erving who said that he had a large investment in the guide and that he would be unwilling to spend any additional money in the development or continuation of activities until such time as a definite sales program or some definite means of securing a return, were attained. He informed plaintiff that he was off the payroll, that he could take care of himself until such time as a sale could be made or some definite prospect could be secured. Gousha went on a trip to New York to interview some people in an endeavor to sell the guide. Plaintiff held himself in readiness to perform any services requested of him. On February 5, 1936, defendant, by its general manager, wrote plaintiff that he had been discharged from active duty

and removed from the payroll, pending the results of an effort being made to secure a purchaser for the guide, and that they would defer discussions as to any further arrangements for his employment or for the release of the Gousha guide data and material, or payment of a royalty for the use of it, or his re-employment, until a reasonable time could be devoted to testing the market. The letter acknowledged demands by plaintiff's attorney. The letter continued stating, "We have this day advised you that while we will not now pay you either salary or expenses, we will, before February 15th, go ahead and, retroactive to January 15th, to which date you were paid all claims for salary and expenses, either reinstate your employment on a basis satisfactory to both of us, or arrange for the continued use of the guide without your services on a basis materially satisfactory, in recognition of your alleged copyright interest in the guide, or abandon it. We wish to state that we are not clear as to the intention of an alleged agreement which you have pertaining to employment, and prefer to wait a few days until Mr. Gousha returns from New York where he is testing the salability of the guide, before we attempt to interpret the application of the agreement to the situation which we now confront." No election was made by the defendant company, as inferred in its letter of February 5, 1936.

The first proposition for us to resolve is as to whether there was a valid written contract. Plaintiff insists that there was and defendant is equally insistent that there was no written contract, but that the relationship was initiated and continued under a verbal contract. The parties negotiated for a written contract. Defendant later drafted the contract, and plaintiff and defendant, by its vice president, signed the contract. Defendant maintains that the marginal note—"This paragraph is subject to further discussion," shows that

the parties' minds did not meet and that, therefore, no written contract was entered into. While the record does not clearly show that the parties thereafter discussed the paragraph of the contract, or any part of the contract, the evidence is convincing that the acts and conduct of defendant constituted a recognition of the contract. Defendant does not point out the terms of the oral contract, which he states the parties acted under. The conduct of the parties, after the execution of the written contract, establishes that they were substantially carrying out the terms of the written contract. At the time Erving discharged plaintiff, he knew of the written contract, as he refers to it as an alleged contract. It is apparent that he was endeavoring to act within the contract. The original answer admitted the contract. After the master's report was presented, defendant obtained leave to amend the second paragraph of the answer. The order which the court entered, struck out the second paragraph and stated that the paragraph was to be treated as no part of the record. Paragraph four of the original answer, however, in effect, admits the contract and stated that it complied with the terms and conditions thereof. Paragraph four was not stricken. The answer and amended answer are under oath and are verified by Miss Dougherty. She swore she had authority to make the affidavit, that she had knowledge of the facts, and that the facts stated in the answer were true. We have carefully read the cases of *Maher v. Bull*, 39 Ill. 531, and *Decatur Coal Co. v. Clokey*, 332 Ill. 253, and we do not believe that they are applicable to the situation presented here. Certainly, in determining the issues, the court had a right to consider the contentions of the parties during the time the case was heard. The defendant, by his answer and by the theory that he adopted during the hearings, admitted the validity and existence of the written contract. We

find that the evidence clearly establishes that the respective parties executed the written contract, that they treated it as a valid contract and that they acted under it as a valid contract.

Hobbs performed the duties called for by the contract. There was no complaint that he was violating the contract. The relationship between the parties was harmonious until Erving purchased a controlling interest in the corporation. He ascertained that the corporation had expended about $128,000 in the Hobbs Guide phase of the business. An examination of his testimony shows that while he took plaintiff off the payroll as of January 15, 1936, he intended to restore him to the payroll later, and even contemplated paying plaintiff a larger salary. Defendant contends that plaintiff did not co-operate and carry out directions for the sale of the guide. This contention is not sustained by the evidence. The conduct of Erving and of the others is not consistent with their later contentions. We, therefore, find that defendant discharged plaintiff without good cause.

After it became apparent that defendant was not going to continue to carry out the terms of the contract, plaintiff insisted on defendant deciding on its course of action under the contract. Defendant, in its letter of February 5, 1936, indicated that it was going to wait a reasonable time in order to determine what to do, and that it would, before February 15, 1936, either reinstate the plaintiff ''on a basis satisfactory to both of us, or arrange for the continued use of the guide without your services on a basis materially satisfactory'' in recognition of his alleged copyright interest in the guide, or abandon it. Defendant did not thereafter advise plaintiff what it would do. In its original answer it did offer to return to plaintiff the data, records, correspondence and material originally made available to defendant. During the trial Erving

testified that Gousha was "revising the idea of the thing and told me he expects to present it in revised form in the near future." The evidence shows that defendant decided to retain the guide. It was endeavoring to secure a purchaser for the same. The contract provides that whenever the company discontinues the use of the Hobbs Guide ideas and the material contained in the Hobbs Guide, and discontinues the making of payments, then all the essential data, records, correspondence, drawings, engravings and copyrights used in conducting and publishing the Hobbs Guide Department in the defendant company, shall be considered to be the property of plaintiff. The company further agreed that all property rights shall revert to plaintiff, and that the company will, upon request, execute proper instruments transferring title to any and all copyright matter and other property to plaintiff, and that they shall then have the right to re-engage in competitive business as before. The company agreed that in the event it discontinued the sale of the Hobbs Guide idea and material that it would discontinue that branch of the business and would not imitate or duplicate the Hobbs Guide, or otherwise compete with Hobbs.

Defendant urges that the written contract purports to prohibit plaintiff from carrying on his trade or business of furnishing tourist guide information within the confines of the United States at any time within the period during which the company shall continue to use his ideas, and that, therefore, the contract is an unreasonable restraint of trade and against public policy, and is, therefore, void. Defendant did not raise such a defense by motion to strike, or in its answer or amended answer. During the hearing defendant treated the contract as valid. At this time it will not be permitted to urge the point. Defendant also argues that plaintiff's complaint is essentially a bill for specific performance. It urges the application of the rule that

even where the terms of the contract are clear and unambiguous, specific performance is not a matter of right but rests in the sound discretion of the court. Defendant also argues that the contract is outrageous and that it is the kind of a contract that the court would be loath to enforce. Defendant filed its answer and its amended answer without raising any question as to the jurisdiction of a court of equity to grant the relief prayed. Neither side demanded a jury trial. The prayer of the complaint is in the alternative. We are unable to say that the contract is unreasonable. The amount required to be paid in the event plaintiff was discharged without good cause, is not unreasonable. It would be very difficult to ascertain the damages. The contract was fairly entered into, no charge of fraud is leveled against plaintiff. The parties are bound by the written contract, which was to the mutual advantage of both. Defendant was laying out large sums of money and plaintiff was devoting his talents and energy toward the enterprise. Good business judgment dictated that the parties should enter into a written agreement governing their relationship. It was only natural that the corporation would desire to be protected in the use of the investment that it had made, and that plaintiff should desire to be protected against sudden discharge after having devoted his talents and energy to the enterprise, with the prospect of only limited compensation.

As plaintiff was not traveling after the middle of January, 1936, we are of the opinion that he is entitled to a salary at the rate of $300 per month for three months, commencing with January 15, 1936, and to $3,000 per year for each year commencing with April 15, 1936; that if defendant continues to use the idea and material of the Hobbs Guide Division, that the court retain jurisdiction to enter judgment each year for such additional amount as is due under the

terms of the contract. Therefore, the decree is reversed and the cause is remanded to the superior court of Cook county with directions to enter a decree in accordance with the recommendation of the master in chancery, except that the judgment shall be based on a salary at the rate of $300 per month for three months from January 15, 1936. Judgment shall also be entered for an additional sum of $12,000, the amount due under the contract for the years beginning May 1, 1936, May 1, 1937, May 1, 1938 and May 1, 1939, at $3,000 per year, and that the court shall retain jurisdiction in the cause to enter judgment each year for such additional amount as is due under the terms of the contract, if defendant continues to use the Hobbs Guide idea and material.

*Reversed and remanded with directions.*

Denis E. Sullivan, P. J., and Hebel, J., concur.

## On Rehearing.

We have carefully considered the petition for rehearing and are satisfied that the opinion disposes of all points raised in the briefs. We considered, but did not comment, on the case of *Lambert v. Alcorn,* 144 Ill. 313. In his brief in the instant case, defendant argues that "plaintiff has no right to enjoy the use of these materials and at the same time to collect compensation for a use that is not made. He should have admitted or stricken the one from his bill." Section 34 of the Civil Practice Act [Ill. Rev. Stat. 1939, ch. 110, § 158; Jones Ill. Stats. Ann. 104.034] provides that relief may be asked in the alternative. Section 43 of the same act provides that when a party is in doubt as to which of two or more statements of fact is true, he may state them in the alternative, and that a bad alternative shall not affect a good one.

In the *Lambert* case a bill of complaint was filed for the purpose of procuring a permanent injunction, re-

straining the defendant from tiling his farm land. It was asserted that the tiling would cause surface water to flow other than in its natural way, thereby flooding complainant's lands. A temporary injunction was granted. On the hearing the court decided mainly in favor of the defendant. However, partial relief was granted to the complainant. The defendant filed suggestions for damages and sought to recover attorney's fees and other expenses that he incurred because of the granting of the temporary injunction. We are of the opinion that the cited case is not applicable to the facts in the case at bar.

Having reconsidered all of the points raised, we will adhere to the views expressed and the directions given in the opinion heretofore filed.

*Reversed and remanded with directions.*

DENIS E. SULLIVAN, P. J., and HEBEL, J., concur.